**John Baxter BUTLER, Administrator of the Estate of Agnes Adeline Butler, Deceased, Plaintiff-Appellant,**

v.

**Billy N. POLK, etc., et al., Defendants,**

**United States Fidelity & Guaranty Co., Defendant-Appellee.**

No. 77–1439.

United States Court of Appeals, Fifth Circuit.

April 11, 1979.

James W. Nobles, Jr., William W. Ferguson, Jackson, Miss., for plaintiff-appellant.

Natie P. Caraway, Jackson, Miss., for defendant-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

In 1974, John Butler, administrator of the estate of Agnes Butler, secured an $80,000

judgment in Mississippi state court against Billy Polk, d/b/a B & P Used Parts, and John George, an employee of Polk. This liability arose out of the death of Mrs. Butler after a collision between her car and a truck belonging to Polk and driven by George. After the judgment, Butler secured a writ of garnishment from the state trial court against United States Fidelity and Guaranty Company (USF&G). The writ asserted that the named garnishee was liable to Polk on a purported liability policy and that as a judgment creditor, Butler succeeded to Polk's claims. Butler had previously secured writs against Thomas Giordano and Giordano Insurance Agency, Inc., and Aetna Life and Casualty Co. Apparently, Butler's claims against Giordano, USF&G, and Aetna were in the alternative: either Giordano had secured liability insurance for Polk from USF&G or Aetna, or his failure to do so gave rise to personal liability.

After the receipt of the writ of garnishment, USF&G removed to the United States District Court for the Southern District of Mississippi.[1] The case proceeded to trial, and the jury found that USF&G had not insured Polk. Butler appeals, asserting that removal was improper; that the verdict was against the great weight of the evidence; and that the district court erred in refusing to allow two witnesses to answer questions eliciting their opinions concerning the import of a conversation between Giordano and Polk.

Discerning no reversible error in this case, we affirm.

Butler's initial argument is that the garnishment action against USF&G was not separate and independent of the action against Giordano,[2] and therefore was not removable under 28 U.S.C. § 1441(c). USF&G asserts that removal properly was taken under § 1441(a–b), since, under Mississippi law, writs of garnishment are in effect separate lawsuits, and, therefore, the claims against Giordano and USF&G were not "joined" under § 1441(c).[3]

Although the question is not entirely free from doubt, we believe that the writ of garnishment was properly removed under § 1441(a–b). We reach this conclusion because of several factors. First, garnishment actions against third-parties are generally construed as independent suits, at least in relation to the primary action.[4] *See Swanson v. Liberty Nat. Ins. Co.*, 353 F.2d 12 (9 Cir. 1965); *Randolph v. Employers*

---

1. Butler filed a motion for remand, but the docket sheets and the record do not reveal that the district court officially acted on the motion.

2. After removal of the USF&G suit, Butler obtained dismissal without prejudice of the writs against Aetna and Giordano in state court. USF&G argues that the dismissal of Giordano moots the removal problem. However, Butler previously raised the removal issue before the district court, and we fail to see any reason to require a party to maintain dual lawsuits in order to preserve this error on appeal.

3. **§ 1441. Actions removable generally**

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

4. Butler does not argue that the garnishment action against USF&G is not independent of the primary liability action between Polk and Butler. A district court has effectively rejected such an argument. *See Moore v. Sentry Ins. Co.*, 399 F.Supp. 929 (S.D.Miss.1975).

*Mut. Liability Ins. Co.,* 260 F.2d 461 (8 Cir. 1958), *cert. denied,* 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573 (1959); *Adriaenssens v. Allstate Ins. Co.,* 258 F.2d 888 (10 Cir. 1958); *Stoll v. Hawkeye Cas. Co.,* 185 F.2d 96 (8 Cir. 1950). Although the cases cited did not consider a procedural problem identical to the present case, they do reflect a recognition that actions such as this are in effect suits involving a new party litigating the existence of a new liability. Second, the pleadings of the plaintiff are couched in terms of individual liability on the part of USF&G. There are no indications that any parallel or shared liability was contemplated or that Giordano was a party to any action.[5] Third, the parties seemingly agree [6] that under Mississippi law, the writs could not initially be brought in a single action.[7]

Removal is a matter of federal right, and although it is axiomatic that ambiguities are generally construed against removal, in the present case it appears that characterization of this action under § 1441(a) is appropriate. Furthermore, little could be served by vacating and ordering a remand to state court. The separable conflict between Butler and USF&G, of which the district court had subject matter jurisdiction, has been fully and fairly tried in district court. *Cf. Finn v. American Fire & Casualty Co.,* 207 F.2d 113 (5 Cir. 1953), *cert. denied,* 74 S.Ct. 476, 347 U.S. 912, 98 L.Ed. 1069 (1954) (defects of jurisdiction in a removed case can be cured after judgment).

Butler also asserts that the trial judge erred when he refused to grant a new trial because the verdict was against the overwhelming weight of the evidence. The appropriate standard of review is whether the trial judge abused his discretion. *See United States ex rel. Weyerhaeuser v. Bucon Constr. Co.,* 430 F.2d 420 (5 Cir. 1970); *Pruett v. Marshall,* 283 F.2d 436 (5 Cir. 1960). We have reviewed the record in this case and it does not appear that this verdict was against the clear weight of the evidence or resulted in a manifest miscarriage of justice.

The sole issue was whether Giordano and Polk had executed an oral contract in which Giordano bound USF&G to provide liability insurance. Most of the evidence was testimony elicited from Giordano and Polk relating to the requisites for the formation of an oral contract of insurance under Mississippi law. As the trial court noted in his opinion denying the motion for new trial, the testimony was conflicting concerning the existence of each of those elements.

Butler's argument is that the evidence establishes that an oral contract existed. That assertion might be true if the contrary testimony of Giordano was entirely discounted. Butler, however, presents no compelling argument or evidence that conclusively discredits Giordano. Under these circumstances, we believe that the trial judge did not abuse his discretion in accepting the jury's resolution of the conflict in evidence.

Butler's final point arises out of the following facts. On direct examination, Butler's counsel questioned Varner and Ellingburg—former employees of Polk—concerning a conversation between Giordano and Polk the day before the accident. Each

---

5. Butler did not articulate the single suit analysis until the motion for remand. He still does not assert that USF&G and Giordano are joint tortfeasors; in fact, the liability asserted is expressly in the alternative.

6. At oral argument, Butler's counsel admitted that he would have had to move for consolidation in state court in order to obtain a single trial.

7. Although the proper characterization of an action under § 1441 is essentially a matter of federal law, to totally ignore the structure of state procedural law would reflect an overly-procrustean view. *Compare Weiner v. Soren-*

son, 341 F.Supp. 397 (E.D.Wis.1972); *Roby v. Maine Central R. R.,* 243 F.Supp. 153 (D. N.H. 1965), *with Fugard v. Thierry,* 265 F.Supp. 743 (N.D.Ill.1967); *Cram v. New England Telephone & Telegraph Co.,* 172 F.Supp. 395 (D. N.H.1958). However, the characterization imparted to a proceeding by state law is not determinative. *See Paxton v. Weaver,* 553 F.2d 936 (5 Cir. 1977); *Federal Savings & Loan Ins. Corp. v. Quinn,* 419 F.2d 1014 (7 Cir. 1969). In the present case, state law as explicated by the parties merely reinforces our determination that the suit against USF&G can properly be viewed as a separate action.

testified that Giordano answered affirmatively when Polk asked if he could put his trucks on the road.[8] Counsel attempted to elicit from Varner and Ellingburg their interpretations of this exchange. USF&G successfully objected in each instance.

In the district court and on appeal, Butler asserts that the responses were admissible under Fed.R.Evid. 701, which provides:

Opinion Testimony by Lay Witnesses

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

■ We do not discern any error in the district court's actions. Although the responses may have been "helpful . . . to the determination of an issue of fact," any enlightenment cast would have been at best marginal, and we believe the responses fall within that class of statements described in the Notes of the Advisory Committee,

If . . . attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule.

8. Varner testified:

Q. Prior to the time that Mr. Giordano left, what did you hear Mr. Giordano tell Mr. Polk, if anything?
A. Well, when he was leaving Bill [Polk] walked out on the front porch, you know, and everybody was out front and Mr. Giordano was getting in his car, and Bill asked him if he could put his trucks on the road and he said, "Yes sir."

Ellingburg testified:

Q. Did you hear any comments that he or Mr. Polk made at that time?
A. Well, they were just talking. . . . And the last thing that I can really remember, when he started to get into his car was Billy asked him, he said, "I'm covered now? I'm covered with insurance?" And Mr. Giordano held the check up and he said, "I've got your money here." He said, "You're covered right now."

Polk previously had testified similarly, and had asserted that he had understood the affirmative response to mean that insurance was in effect. Giordano denied that this exchange took place.

The statements ascribed to Polk and Giordano were straightforward, and we fail to perceive how the perceptions of Varner and Ellingburg could have appreciably aided the jury in its evaluation of the subject conversation.[9]

AFFIRMED.

9. Butler contends that *United States v. Smith,* 550 F.2d 277 (5 Cir. 1977), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977), requires reversal on this issue. In *Smith* this court held that admission of a witness' opinion of a criminal defendant's understanding of federal law was not reversible error. *Id.* at 281. The court concluded that the testimony was based on personal observation and that the testimony would "facilitate an understanding of a factual issue." *Id.* We perceive no conflict between our holding and that of *Smith.* Implementation of Rule 701 is necessarily dependent upon an analysis on the facts of a particular case if the opinion solicited would in fact be appreciably helpful in putting "the trier of fact in possession of an accurate reproduction of the event." Notes of Advisory Committee. As we indicated in the text, the opinions of Varner and Ellingburg would have been of only marginal utility.